# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRISTOPHER ASTORINO,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

02:12-CV-172-TFM

**MEMORANDUM OPINION AND ORDER OF COURT**

___(date)___, 2012

## I. Introduction

Plaintiff, Christopher Astorino ("Plaintiff"), brought this action pursuant to 42 U.S.C. § 405(g), for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") which denied his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433.

## II. Background

### A. <u>Facts</u>

Plaintiff was born on September 10, 1965, and was 45 years old at the time of the decision of the Administrative Law Judge. Plaintiff has a college degree and a law degree. He has past relevant work experience as an attorney and as a music teacher. The vocational expert testified that Plaintiff's past job as an attorney was sedentary, skilled work; and his past job as a music teacher is typically light, skilled work, but was considered sedentary, skilled work as he actually performed it. (R. at 74).

Plaintiff alleges disability as of December 30, 2008, due to multiple sclerosis ("MS"). The record reflects that Plaintiff has not engaged in substantial gainful work activity since December 30, 2008, his alleged onset date.[1]

B.     **Procedural History**

Plaintiff initially filed his instant application[2] for DIB on May 1, 2009, in which he claimed total disability since December 30, 2008. Plaintiff's application was denied initially on August 6, 2009. The Plaintiff filed a written request for hearing on August 6, 2009. An administrative hearing was held on September 7, 2010 before Administrative Law Judge Guy Koster ("ALJ"). Plaintiff was represented by Barbara S. Manna, a non-attorney representative, and testified at the hearing. Charles M. Cohen, Ph.D., an impartial vocational expert, also testified at the hearing.

On September 30, 2010, the ALJ rendered an unfavorable decision to Plaintiff in which he found that Plaintiff was not disabled within the meaning of the Act from December 30, 2008 through September 30, 2010, the date of the decision. Furthermore, the ALJ found that Plaintiff retained the residual functioning capacity to perform light work with a sit/stand option that does not require climbing ropes, ladders, scaffolds, exposure to hazards, extensive handwriting, or acute vision tasks.

The ALJ's decision became the final decision of the Commissioner on December 9, 2011, when the Appeals Council denied Plaintiff's request to review the decision of the ALJ.

---

[1] Plaintiff has worked part-time as a music teacher since his alleged onset date, however, that work was determined not to be substantial gainful activity. (R. at 18, 50-51, 166). *See* 20 C.F.R. §§ 404.1571 et seq.
[2] Plaintiff filed prior applications in 2004 and 2005, which were both denied at the initial level of review and never appealed. (R. at 115).

On February 10, 2012, Plaintiff filed his Complaint in this Court in which he seeks judicial review of the decision of the ALJ. The parties have filed cross-motions for summary judgment. Plaintiff argues that the ALJ failed to properly evaluate the medical opinion evidence of Thomas F. Scott, M.D. ("Dr. Scott"), Plaintiff's treating physician.

Specifically, Plaintiff argues that the ALJ erred in: a) failing to properly evaluate the opinions of Dr. Scott pursuant to 20 C.F.R. § 404.1527(d); and b) providing more weight to the opinions of a non-examining physician than to the opinions of Dr. Scott. The Commissioner contends that substantial evidence supports the ALJ's finding that Plaintiff is not disabled; and that substantial evidence supports the ALJ's finding that Plaintiff could perform the light work the VE identified. The Court agrees with the Commissioner and will therefore grant the motion for summary judgment filed by the Commissioner and deny the motion for summary judgment filed by Plaintiff.

**III.    Legal Analysis**

    **A.    <u>Standard of Review</u>**

The Act limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. § 405(g). If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). It consists of more than a scintilla of evidence, but less than a preponderance. *Thomas v. Commissioner of Social Security*, 625 F.3d 798 (3d Cir. 2010).

When resolving the issue of whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. § 404.1520. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work. *See* 42 U.S.C. § 404.1520; *Newell v. Commissioner of Social Security*, 347 F.3d 541, 545-46 (3d Cir. 2003) (*quoting Burnett v. Commissioner of Social Security*, 220 F.3d 112, 118-19 (3d Cir. 2000)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Halter*, 247 F.2d 34, 38-39 (3d Cir. 2001) (internal citations omitted); 42 U.S.C. § 423(d)(1). This may be done in two ways:

> (1) by introducing medical evidence that the claimant is disabled *per se* because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1. *See Heckler v. Campbell*, 461 U.S. 458 (1983); *Newell*, 347 F.3d at 545-46; *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004); or,

> (2) in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy…." *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423(d)(2)(A)).

Where a claimant has multiple impairments which may not individually reach the level of severity necessary to qualify under any impairment for listed impairment status, the Commissioner nevertheless must consider all of the impairments in combination to determine whether, collectively, they meet or equal the severity of a listed impairment. *Diaz v. Commissioner of Social Security*, 577 F.2d 500, 502 (3d Cir. 2010); 42 U.S.C. § 423 (d)(2)(c)

4

("in determining an individual's eligibility for benefits, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.")

Alternatively, in order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes claimant from returning to his or her former job. *Newell*, 347 F.3d at 545-46; *Jones*, 364 F.3d at 503. Once it is shown that a claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given claimant's residual functioning capacity,[3] mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Rutherford*, 399 F.3d at 551; *Newell*, 347 F.3d at 546; *Jones*, 364 F.3d at 503; *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002).

In this case, the ALJ determined that Plaintiff was not disabled within the meaning of the Act at the third and fifth step of the sequential evaluation process. In making his determination regarding the third step of the evaluation process, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. I. (R. at 19). Regarding the fifth step of the evaluation process, after careful consideration of the entire record and the testimony of the vocational expert, the ALJ concluded that Plaintiff had the residual functioning capacity to perform light work that affords a sit/stand option and does not require climbing ropes, ladders or scaffolds or expose him to hazards. (R. at 19).

---

[3] Residual Functioning Capacity is "what a [Plaintiff] can still do despite his limitations." *Ramirez v. Barnhart*, 372 F.3d 546, 551 n.1 (3d Cir. 2004) (*citing* 20 C.F.R. § 416.945(a)).

5

Furthermore, the ALJ determined Plaintiff's acute vision is limited and his tremors prevent extensive writing. (R. at 19).

### B. Discussion

As set forth in the Act and applicable case law, this Court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). The Court must simply review the findings and conclusions of the ALJ to determine whether they are supported by substantial evidence. 42 U.S.C. § 405(g); *Schaudeck v. Comm'n of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

Plaintiff argues that the ALJ erred in: (a) failing to properly evaluate the opinions of Dr. Scott pursuant to 20 C.F.R. § 404.1527(d)[4] and (b) providing more weight to the opinions of a non-examining physician than to the opinions of Dr. Scott. Plaintiff's arguments will be addressed seriatim.

1. *The ALJ properly evaluated the opinions of Dr. Scott pursuant to 20 C.F.R. § 404.1527(c).*

Plaintiff contends that the ALJ's evaluation of the medical opinion evidence offered by Dr. Scott is both legally deficient and not supported by substantial evidence and warrants a reversal of the ALJ's decision. (Pl.'s Br. at 10). In support of this contention, Plaintiff argues that there is no indication that the ALJ evaluated the opinions of Dr. Scott in accordance with the factors outlined in 20 C.F.R. § 404.1527(c); and that there is no indication in the record that the ALJ properly considered the length, nature or extent of the treatment provided by Dr. Scott or the specialization of the doctor. (Pl.'s Br. at 11). Due to

---

[4] The statutory section Plaintiff refers to in his brief is currently codified at 20 C.F.R. § 404.1527(c).

these alleged deficiencies, Plaintiff argues that Dr. Scott's opinion is entitled to controlling weight regarding the issue of Plaintiff's disability. (Pl.'s Br. at 11). Therefore, Plaintiff argues the ALJ's rationale is directly contradicted by evidence in the record, and thus should not be found to be an adequate reason for rejecting the opinions of the treating physician. (Pl.'s Br. at 11-12).

The ultimate determination of whether the Plaintiff meets the statutory definition of disabled is reserved for the Commissioner of Social Security, "because they are administrative findings that are dispositive of a case." 20 C.F.R. § 404.1527(d)-(d)(1). As such, an opinion from a treating medical source on the issue of whether a Plaintiff is disabled is "never entitled to controlling weight or special significance." SSR 96-5p, 1996 WL 374183 at *1 (July 2, 1996); 20 C.F.R. § 404.1527(d)-(d)(3); 20 C.F.R. § 404.1527(d)(1) (stating that "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

When determining whether a Plaintiff is disabled under the Act, the Commissioner "will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(b). With regard to a treating source's opinion, the Commissioner will generally give such an opinion controlling weight if it is: (1) well-supported by other medical evidence; and (2) not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). "Whether a medical opinion is "not inconsistent" with the other substantial evidence is a judgment that adjudicators must make in each case." SSR 96-2p, 1996 WL 374188 at *3 (July 2, 1996). An obvious inconsistency may exist "when two medical sources provide inconsistent medical opinions about the same issue." *Id*. Additionally, "a treating source's medical opinion on what an individual can still do despite his or her impairment(s) will not be entitled to

7

controlling weight if substantial, *nonmedical evidence* shows that the individual's actual activities are greater than those provided in the treating source's opinion." *Id*. at *4 (emphasis added). Nonmedical evidence includes, but is not limited to, statements made by claimants about their impairments, restrictions, daily activities, efforts to work, or any other relevant statements made to medical sources during an examination or treatment, to the court or ALJ during interviews, on applications, in letters, and in testimony during an administrative proceeding. 20 C.F.R. § 404.1512(b)(3).

Although the Commissioner may not give a treating source's opinion controlling weight, it must never be ignored. SSR 96-5p, 1996 WL 374183 at *3 (July 2, 1996). In the event the Commissioner does not give the treating source's opinion controlling weight, the Commissioner will apply a list of factors to determine the amount of weight to give the opinion, and must give good reasons in the Commissioner's ultimate decision regarding the weight given to the treating source's opinion. 20 C.F.R. § 404.1527(c)(2). These factors include: (i) the length of treatment and the frequency of examination; (ii) the nature and extent of the treatment relationship; (iii) supporting explanations for the opinion; (iv) the consistency of the opinion with the record as a whole; (v) whether the opinion is from a specialist in the medical issues at bar; and (vi) any other factors, of which the Commissioner is aware, that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6). Ultimately the Commissioner's decision:

> [M]ust contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188 at *5 (July 2, 1996).

Plaintiff relies heavily upon the opinion of Dr. Scott that he is disabled. This opinion was authored by Dr. Scott in August 2010 in a narrative report prepared at the request of Plaintiff's counsel one month prior to the administrative hearing. (R. at 256-257). The decision of the ALJ contains in-depth commentary regarding the treatment by, and opinions of Dr. Scott.[5] Indeed, the ALJ fully recognized and considered Dr. Scott's opinion, noting that:

> On August 31, 2010 Dr. Scott wrote that the claimant has multiple sclerosis and has been followed since 2002. Despite his [Plaintiff's] compliance with the medication he has problems with cognition and balance. During his last examination he demonstrated his poor balance, tremors and irritable mood. He cannot work [as] a lawyer in any capacity due to fatigue, cognitive problems and trouble with his memory, balance, and overall poor endurance. The impression was longstanding multiple sclerosis with disabling features of poor balance, tremors, poor vision (related to multiple sclerosis and other ocular problems), overall poor endurance and fatigue (Exhibit 10F).

(R. at 21). Similarly, it is clear from the record that the ALJ considered the nature and extent of the treatment relationship between Plaintiff and Dr. Scott. The ALJ discussed the multiple appointments between Plaintiff and Dr. Scott from 2002 to 2010, and briefly described the impressions and diagnoses from each appointment. (R. at 20-21). The ALJ noted that "Dr. Scott initially reviewed his [Plaintiff's] MRI scans in 2002 and felt that they were quite consistent with multiple sclerosis, however he [Plaintiff] had minimal signs on examination." (R. at 20). The ALJ recounted that Plaintiff "was seen in follow up in 2005 and remained in good condition in that time," and had an "excellent checkup in 2006." (R. at 21). The ALJ

---

[5] The ALJ found that Plaintiff's severe impairments consisted of Plaintiff's MS and his history of kidney stones. (R. at 18). However, the ALJ found that Plaintiff's kidney stones condition had been resolved with treatment, and as such, did not result in any significant limitations. (R. at 18). Therefore, the ALJ focused on the limitations presented by Plaintiff's MS in his analysis of Plaintiff's disability claim.

9

also recognized that Plaintiff saw Dr. Scott in 2007 for "some loss of balance" and other new symptoms, and although Plaintiff had "no relapses in 2008," he returned to Dr. Scott in February 2010 with worsening fatigue, some tremor, worsening balance, and complaints that Plaintiff's "cognitive function was starting to slip." (R. at 21). Furthermore, by referring to Dr. Scott as a "specialist," the ALJ understood that Dr. Scott had expertise in the treatment of MS. (R. at 21). In summary, the ALJ considered Dr. Scott's opinion, as Plaintiff's treating physician, in great depth.

The ALJ also explained why the other medical evidence of record, including Dr. Scott's own findings, conflicted with his August 2010 opinion that Plaintiff was disabled. The ALJ discussed the benefits of treatment Dr. Scott provided to Plaintiff, stating "[t]he claimant received treatment from a specialist for his multiple sclerosis which has generally been successful in controlling these [Plaintiff's] symptoms…[h]e has been prescribed, and has taken, appropriate medications for the alleged impairments and the medical records reveal that the medications have been relatively effective in controlling his symptoms." (R. at 21).

The ALJ specifically discussed the contradiction between Dr. Scott's August 2010 opinion and his own treatment notes and the objective descriptions of Plaintiff's impairments. Dr. Scott noted that at the time of his examination of Plaintiff in 2002, that Plaintiff displayed only minimal signs of MS, in the form of some "mild decreased vibratory, hyperactive reflexes." (R. at 213). Despite Plaintiff's mild symptoms upon examination, Dr. Scott prescribed Plaintiff Avonex in August of 2002. (R. at 213). Plaintiff was seen in a follow-up examination in 2005, and Dr. Scott noted he "remained in good condition at that time," despite that fact his MRI scans showed more signs of MS. (R. at 213). A subsequent third MRI scan showed his condition was improved. (R. at 213). Plaintiff then had "an excellent

checkup in 2006." In 2007, Plaintiff exerienced some new problems; including loss of balance, some bladder dysfunction and bowel dysfunction, and worsening vision. (R. at 213). In 2008, there was no relapse. Plaintiff apparently was not treated by Dr. Scott in 2009.

Abu N. Ali, M.D., a state agency physician, reviewed the medical evidence of record in August 2009. Dr. Ali opined that Plaintiff maintained the residual functioning capacity to complete a full range of medium work with no non-extertional limitations. (R. at 206-12). Dr. Ali's physical residual functional capacity assessment noted no established postural, manipulative, visual, communicative, or environmental limitations. (R. at 208-09). Dr. Ali did find that Plaintiff had some exertional limitations with his ability to lift and/or carry objects and regarding the amount of time Plaintiff was able to stand, walk, and/or sit in an 8-hour workday. (R. at 207). Dr. Ali noted that Plaintiff "described daily activities that are significantly limited" however, they were "not consistent with the limitations indicated by other evidence in this case." (R. at 211). Dr. Ali went onto mention that Plaintiff does drive a car, and that the treatment Plaintiff received had been successful in controlling his MS symptoms, and that the medications "have been relatively effective in controlling these symptoms." (R. at 211).

Plaintiff himself stated at the ALJ hearing that his daily activities included relaxing on the porch, cooking himself meals, driving himself to Starbucks regularly, running errands, composing music, and working on his muscle cars. (R. at 139). Plaintiff retains a driver's license, and is only restricted in that he must wear glasses to drive. (R. at 49). Plaintiff does not require the use of an assistive device to walk around, despite the fact that he reported "difficulty just moving about," and has "severe balance problems." (R. at 64). Plaintiff also denied that his MS causes him any physical pain. (R. at 70).

11

Additional evidence in the record demonstrates that, in October of 2008, Plaintiff had normal motor strength, bulk, tone, and coordination and that he had suffered no relapse related to his MS. (R. at 177). Records from that time also indicate that Plaintiff denied having any weakness and his neurological status was grossly intact without focal neurological deficits. (R. at 178-79). A subsequent emergency room visit in June of 2009 reflects that Plaintiff had good motor strength. (R. at 183). Another record from June 11, 2009 shows that Plaintiff's mental status was alert and oriented, fully ambulatory, and had good motor strength. (R. at 222, 226). In December of 2009, medical records also show that Plaintiff appeared well-developed and well-nourished; was in no distress; was alert, awake, and oriented; demonstrated no motor or sensory deficits; and all of his reflexes were within normal limits. (R. at 237-38).

The ALJ concluded, based upon a review of the record evidence as a whole, that Dr. Ali's opinion was well-supported and more consistent with the evidence than Dr. Scott's August 2010 opinion.[6] (R. at 21). Despite this, the ALJ accorded some weight to Plaintiff's subjective complaints, and Dr. Scott's opinion, and determined that Plaintiff's residual functioning capacity should be limited to light, rather than medium work, as Dr. Ali had suggested. (R. at 19). The ALJ also found that Plaintiff could perform only light work that afforded him a sit/stand option and did not require him to climb ropes, ladders or scaffolds or expose him to hazards. (R. at 19). The ALJ further restricted Plaintiff's light work to exclude jobs requiring extensive writing, to account for Plaintiff's limited vision and tremors. (R. at 19).

---

[6] This conclusory statement, by itself, would not have provided a sufficient explanation. However, it is an adequate summary of the ALJ's extensive review of the record, as discussed above.

Ultimately, the ALJ was not required to accept Dr. Scott's opinion that Plaintiff is disabled, because eligibility for benefits is a legal determination, which is ultimately for the Commissioner to decide. 20 C.F.R. 404.1527(e)(2)(i). As shown above, the record reflects that Dr. Scott's August 2010 opinion is inconsistent with other evidence of record and is not well-supported by the other medical examination findings of record. For the same reasons, reliance upon the opinion of Dr. Scott regarding whether Plaintiff meets or equals the listing requirements for MS under the Listing of Impairments codified at 20 C.F.R. pt. 404, subpt. P., appx. 1, listing 11.09 is unsupported and in conflict with the other evidence of record.

Plaintiff has not shown at step three of the evaluation process that his condition meets or equals all of the criteria of a listed impairment. See *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). The medical evidence of record, as discussed above, does not demonstrate that Plaintiff's condition meets or equals the listing requirements for MS. Therefore, the ALJ's determination that Plaintiff's condition did not meet or equal the listing requirements for MS is supported by substantial evidence.

**IV.  Conclusion**

It is undeniable that Plaintiff has an impairment, and this Court is sympathetic and aware of the challenges which Plaintiff faces in seeking gainful employment. Under the applicable standards of review and the current state of the record, however, the Court must defer to the reasonable findings of the ALJ and his conclusion that Plaintiff is not disabled within the meaning of the Social Security Act, and that he is able to perform a wide range of light work that affords a sit/stand option, that does not require climbing ropes, ladders or scaffolds or expose him to hazards, and that does not include extensive writing.

For the foregoing reasons, the Court will grant the Motion for Summary Judgment filed by the Commissioner and deny the Motion for Summary Judgment filed by Plaintiff. An appropriate Order follows.


McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| CHRISTOPHER ASTORINO, | ) | |
| Plaintiff, | ) | |
| v. | ) | 02:12-CV-172-TFM |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY, | ) | |
| Defendant. | ) | |

## ORDER OF COURT

**AND NOW**, this 10th day of August, 2012, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED, AND DECREED** that:

1. The Motion for Summary Judgment filed by Plaintiff, Christopher Astorino (Document No. 10) is **DENIED**;

2. The Motion for Summary Judgment filed by Defendant, Michael J. Astrue, Commissioner of Social Security (Document No. 12) is **GRANTED**; and

3. The Clerk of Court is to docket this case closed forthwith.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

Cc: Erik W. Berger, Esquire
Email: eberger@ewbergerlaw.com

Michael Colville, Esquire
Assistant U.S. Attorney
Email: Michael.colville@usdoj.gov